# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DAUD ABDULLAH HOLIDAY,**

      **Plaintiff,**

                                         Civil action no. 1:15cv22
                                         (Judge Keeley)

**v.**

**DHO DISCIPLINARY HEARING BOARD OF BOP.**
**T. LANE,**
**T. O'BRIEN,**
**SMU DHO (Hearing Officer),**
**USP LEWISBURG DHO BOARD OFFICERS,**
**WARDENS,**

      **Defendants.**

## REPORT AND RECOMMENDATION

On February 9, 2015, Plaintiff initiated this action by filing a four-page, handwritten document which contains the designation Habeas Corpus in the style of the case and to which is attached an Inmate Discipline Date Chronological Disciplinary Log (Condensed). ECF No. 1. Despite the habeas corpus designation, the matter was opened as a <u>Bivens</u> action, and Plaintiff was sent a Notice of Deficient Pleading with instruction that he must complete the <u>Bivens</u> packet that was enclosed. On February 23, 2015, Plaintiff filed the <u>Bivens</u> packet and named as defendants the "DHO Boab Hazelton," "DHO Boab Lewisburg," "Warden(s) Hazelton," and "Warden(s) Lewisburg." ECF No. 5. In addition, he filed a Motion to Proceed *in forma pauperis,* a Consent to Collection and a Motion Requesting the Release of Prisoner Trust Account Report ("PTAR"). ECF No. 8. On March 19, 2015, an Order was entered denying Plaintiff's Motion for Release of PTAR and directing him to show cause why his case should not be dismissed for failure to prosecute. ECF

No. 9. On March 30, 2015, Plaintiff filed an Inmate Statement, which is a Bureau of Prisons generated accounting of a prisoner's PTAR. ECF No. 10 at 2. On March 31, 2015, Plaintiff was granted leave to proceed *IFP* without requiring an initial partial filing fee. Although Plaintiff indicated in his form complaint that he had not exhausted his administrative grievance, Plaintiff's explanation raised questions regarding exhaustion issues. Moreover, because Plaintiff provided no names of any BOP official involved, and the complaint provided very little factual detail and contained allegations which were nearly impossible to understand, an order was entered directing him to file his administrative grievances within fourteen days. On June 15, 2015, Plaintiff filed a "Motion with Grievance Attachment and Question of Personality." ECF No. 18. Attached to the "motion" is an Administrative Remedy Generalized Retrieval Sanitized Format, which is a report generated by the BOP which lists grievances filed by an inmate and gives the status of the grievance, but does not contain the actual language of the grievance or the responses thereto. ECF No. 18-1. This matter is now before the undersigned for an initial review and report and recommendation pursuant to LR PL P 2 and 28 U.S.C. §§ 1915(e) and 1915(A).

## I. The Complaint

As an initial matter, the undersigned notes that Plaintiff's original pleading and attachment is an exact duplicate of that filed on February 9, 2015, in Civil Action Number 5:15cv16. That civil action was opened as a habeas petition pursuant to 28 U.S.C. § 2241 and transferred to the Middle District of Pennsylvania on the same date it was filed. It would appear because the pleading contains references to the conditions of confinement,[1] the same document was used to open a Bivens on

---

[1] At the time Plaintiff filed this initial pleading, he was confined at U.S.P Lewisburg, which is located in Lewisburg, Pennsylvania. Accordingly, to the extent that Plaintiff was seeking habeas relief, proper venue was in the Middle District of Pennsylvania. However, some of the allegations regarding

2

Plaintiff's behalf.

In his original pleading, Plaintiff indicates that he entered USP Hazelton on March 6, 2014 and was placed in lock down within one week. ECF No. 1 at 2. He also indicates that he filed a complaint raising numerous allegations regarding the conditions of his confinement at that facility.[2] Plaintiff also indicates that he received a violation report for a "205 incident."[3] Plaintiff maintains that he never saw a Disciplinary Officer for a violation other than the 205 incident, but his unit team referred him to the Special Management Unit out of retaliation. He also appears to allege that he is suicidal and that "mental health" has told him to kill himself seven or eight times. Plaintiff also alleges that officers came to his cell one day and sexually assaulted him. He further alleges that at USP Lewisburg, correctional officers placed him in restraints, choked him and tried to take out his eye with some type of glue substance that left marks on his eye and face. Plaintiff also alleges that mental health refused him treatment. He maintains that he feels suicidal because he had no attorney on appeal.[4] For his claim for relief, Plaintiff seeks expungement of all incidents from April 14, 2014 through January 26, 2015; (2) restoration of good time credit; (3) restoration of phone privileges, visits, email and commissary privileges; and (4) a transfer for his safety.

---

conditions of confinement appear to relate to his incarceration at U.S.P. Hazelton, and venue regarding those claims is appropriate in this district.

[2] In fact, Plaintiff filed a Bivens action on April 28, 2014, fifty-one days after he was designated to USP Hazelton. See 1:14cv76.

[3] A review of BOP Program Statement 5270.09, Inmate Discipline Program, indicates that a Code 205 is for Engaging in Sexual Acts. Prohibited acts are grouped by severity level with those in the 100 series being classified as the greatest severity level, those in the 200 series being classified as high severity level; those in the 300 series being classified as moderate severity level; and those in the 400 series being low severity level.

[4] The undersigned assumes Plaintiff is referring to the appeal of his disciplinary proceeding.

In his form complaint, Plaintiff provides almost no information. He presents one claim which reads as follows: "I falsly (sic) lock up." ECF No. 5 at 7. In support of that claim, Plaintiff indicates that "no motion file [,] no attorney, no appeal, no nothing." Id. at 7-8. Under injuries, he indicates that he has a broken jaw, [bruises] for life, lost teeth, mental distress, lost legal work and books as well as movie scripts he wrote, and was sexually assaulted. For relief, he again seeks restoration of his good conduct time, transfer to a program and protected institution and expungement of incidents from March 6, 2014 through February 12, 2015.[5]

## II. Standard of Review

This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis* in cases which seek redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915(e)(2)(B)(ii). In particular, the Court is obliged to review the complaint pursuant to 28 U.S.C. § 1915A which provides in pertinent part:

> (B) **Grounds for dismissal.** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune for such relief

---

[5] During this date range, Plaintiff has been found guilty of the following code violations: (1) two for Code 329 – Destroying, altering, or damaging government property, or the property of another person, having a value of $100.00 or less; three for Code 205 – Engaging in Sexual Acts; five for Code 208 – Interfering with Security Devices; Code 330 – Being Unsanitary or Untidy; and two for Code 203 – Threatening Bodily Injury. As a result of these disciplinary convictions, Plaintiff has lost an unknown amount of Good Conduct Time, and commissary privileges, phone use, visits and his mattress for unknown periods of time. ECF. No. 1-1 at 1-2. See Program Statement 5270.09 at 46-51 available at BOP.gov.

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints. However, in Bell Atlantic Corp v. Twombly, 550 U.S. 544 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Id. at 555.

The Supreme Court elaborated on its holding in Twombly in Ashcroft v. Iqbal, 556 U.S. 662 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Twombly, 550 U.S. at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id., at 556, 127 S.Ct. 1955.
>
> * * *
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

556 U.S. at 679.

### III. ANALYSIS

**A.  Lewisburg BOP Employees**

In both his original pleading and form complaint, Plaintiff includes as defendants both the warden of USP Lewisburg and the DHO "Boab" at Lewisburg. For a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied. "First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements." Christian Sci. Bd. Of Dirs. Of the First Church of Christ v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). The West Virginia long-arm statute is contained in W.Va. Code §56-3-33(a).[6]

---

[6]This section provides as follows:
(a) The engaging by a nonresident, or by his or her duly authorized agent, in any one or more of the acts specified in subdivisions (1) through (7) of the subsection shall be deemed equivalent to an appointment by such nonresident of the secretary of state, or his successor in office, to be his or her true and lawful attorney upon whom may be served all lawful process in any action or proceeding against him or her, in any circuit court in this state, including an action or proceeding brought by a nonresident plaintiff or plaintiffs, for a cause of action arising from or growing out of such act or acts, and the engaging in such act or acts shall be a signification of such nonresident's agreement that any such process against him or her, which is served in the manner hereinafter provided, shall be of the same legal force and validity as though such nonresident were personally served with a summons and complaint within this state:
   (1) Transacting any business in this state;
   (2) Contracting to supply services or things in this state;
   (3) Causing tortious injury by an act or omission in this state;
   (4) Causing tortious injury outside this state if he or she regularly does or solicits business, or engages in any persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
   (5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he or she might reasonably have expected such person to use, consume or be affected by the goods in this state; Provided, That he or she also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
   (6) Having an interest in, using or possessing real property in this state; or
   (7) Contracting to insure any person, property or risk located within this state at the time of contracting.

(b) When jurisdiction over a nonresident is based solely upon the provisions of this section, only a cause of action arising from or growing out of one or more of the acts specified in subdivision (1)

The Southern District of West Virginia has succinctly stated as follows regarding personal jurisdiction:

> "[b]ecause the West Virginia long-arm statute is coextensive with the full reach of due process, it is unnecessary...to go through the normal two-step formula for determining the existence of personal jurisdiction. Rather the statutory inquiry necessarily merges with the Constitutional inquiry. In re Celotex Corp., 124 F.3d 619, 627-28 (4th Cir. 1997).
>
> To satisfy constitutional due process, the defendant must have sufficient minimum contacts with West Virginia so that requiring it to defend its interest here would not "Offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Those minimum contacts necessary to confer jurisdiction are limited to those activities by which a person "purposely avails itself of the privilege of conducting activities within the forum state."Hanson v. Denckla, 357 U.S. 235, 253, 78 S,Ct. 1228, 2 L.Ed.2d 1283 (1958)see also In re Celotex, 124 F.3d at 628 (the minimum contacts must be "purposeful"). This occurs where the contacts "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed..2d 528 (1985)(emphasis in original), or where the defendant's efforts are "purposefully directed" at the state. Id. at 476, 105 S.Ct. 2174.

Vass v. Volva Trucks North America, Inc., 304 F. Supp.2d 851, 854 (S.D. W.Va. 2004).

With regard to the actions of BOP personnel at USP Lewisburg, Plaintiff has failed to assert any contact by them with the State of West Virginia, much less the minimum contact necessary to satisfy the Due Process Clause. Thus, based on the information contained in the complaint, the Court cannot exercise personal jurisdiction over any BOP personnel at USP Lewisburg because any action they took appears not to have occurred anywhere in West Virginia, and there is no indication that these defendant had any contact with the State of West Virginia. Accordingly, both the warden and the DHO at USP Lewisburg should be dismissed as defendants in this matter.

---

through (7), subsection (a) of this section may be asserted against him or her.

## B. Warden of Hazelton

Liability in a <u>Bivens</u> case is "personal, based upon each defendant's own constitutional violations." <u>Truloch v. Freeh</u>, 2755 F.2d 391, 402 (4th Cir. 2001) (internal citation omitted). Thus, in order to establish liability in a <u>Bivens</u> case, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994); <u>Colburn v. Upper Darby Township</u>, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See <u>Zatler v. Wainbright</u>, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for violation of a constitutional right in a <u>Bivens</u> case. <u>Rizzo v. Good</u> 423 U.S. 362 (1976).

Here, beyond naming him in the caption of the case, Plaintiff never again mentions the Warden of U.S. P. Hazelton. Accordingly, he has failed to identify any action taken by said Defendant that violated his constitutional rights, and accordingly the Warden of U,S.P. Hazelton should be dismissed from this case.

## C. Conditions of Confinement/Excessive Force

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001). A <u>Bivens</u> action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[1] and is required even when

---
[1] <u>Id</u>.

the relief sought is not available. Booth, at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted prior to filing a complaint in federal court. *See* Porter, at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 548 U.S. 81, 84-85 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires full and proper exhaustion." Woodford, at 92-94 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 101-102.

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). See 28 C.F.R. § 542.10, et seq. If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response.² An inmate is not deemed to have exhausted his administrative remedies until

---

² "If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. Once filed, response shall be made by the Warden or CMM. within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days...If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals. If the inmate does not

he has filed his complaint at all levels. 28 C.F.R.§ 542.10-542.15; Gibbs v. Bureau of Prison Office, FCI, 986 F.Supp. 941, 943 (D.Md. 1997).

In Jones v. Bock, 549 U.S. 199 (2007), the United States Supreme Court ruled, among other things, that an inmate's failure to exhaust under the PLRA is an affirmative defense, and an inmate is not required to specifically plead or demonstrate exhaustion in his complaint. Nonetheless, pursuant to the Court's authority under 28 U.S.C. § 1915, it not foreclosed from dismissing a case *sua sponte* on exhaustion grounds, if the failure to exhaust is apparent from the face of the complaint. See Anderson v. XYZ Prison Shealth Services, 407 F.3d 674, 681-82 (4th Cir. 2005).

In his form complaint, Plaintiff makes no allegations that would give rise to a Bivens claim. However, in his original pleading, Plaintiff makes various claims regarding violations of his Eighth Amendment Rights. These claims include use of excessive force, denial of appropriate food and clothing, and failure to protect. ECF No. 1 at 2-3. However, Plaintiff acknowledges that he did not exhaust his administrative remedies. ECF No. 5 at 6. In explaining this failure Plaintiff provides the following:

> I do not understand the law under Jones v. Buck (sic) (2007) it stated grievance is not needed but is affirmative defense meaning I presented my claims and I was afraid for my life relly (sic) afraid so I sent everything to the court A-SAP.

Id. at 6.

Although exhaustion is always required, there are exceptions to the requirement that an inmate initially file a grievance at the institution level. Particularly, 28 C.F.R. § 542.14(d)(1) provides:

> Sensitive issues. If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the

---

receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

institution, the inmate may submit the Request directly to the appropriate Regional Director. The inmate shall clearly mark "Sensitive" upon the Request and explain, in writing, the reason for not submitting the request at the institution. If the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted. Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request. The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden. The Warden shall allow a reasonable extension of time for such a resubmission.

Here, the Administrative Remedy Generalized Retrieval Form provided by Plaintiff confirms that he did not exhaust any grievance that he filed concerning events at USP Hazelton. Moreover, while records available to the court establish that Plaintiff did prepare a Regional Administrative Remedy Appeal ("BP–10") on April 17, 2014, regarding staff at U.S.P Hazelton[3], which appears to raise some of the issues involved in this matter, he did not mark "Sensitive" on the request, but instead, wrote "EMERGENCY forward to internal affairs." Moreover, the plaintiff did not explain, in writing, his reason for not submitting the request at the institution. Additionally, the grievance was rejected on May 8, 2014, and there is no indication that Plaintiff re-filed the Remedy in appropriate fashion. ECF No. 18-1 at 1.

Finally, the undersigned acknowledges that despite the fact that the Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements," Booth, 532 U.S. at 741, n.6, several courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances. See Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004) (defendant may be estopped from asserting exhaustion as a defense when defendant's actions render grievance procedure unavailable); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to

---

[3]See 1:14cv76 ECF No. 1-2 at 1. Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009)(courts "may properly take judicial notice of public record); Colonial Penn. Ins. Co. V. Coil, 887 F.2d 1236,, 1239 (4th Cir. 1989)("We note that 'the most frequent use of judicial notice is in noticing the contents of court records.'").

11

complete administrative exhaustion); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (remedy not available within meaning of § 1997e(a) when prison officials prevent a prisoner from utilizing such remedy); Aceves v. Swanson, 75 F. App'x 295, 296 (5th Cir. 2003) (remedies are effectively unavailable where prison officials refuse to give inmate grievance forms upon request). Indeed, the Fourth Circuit has held that "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

Furthermore, a number of courts of appeals have held that prison officials' threats of violence can render administrative remedies unavailable. See, e.g., Turner v. Burnside, 541 F.3d 1077, 1085 (11th Cir. 2008); Kaba v. Stepp, 458 F.3d 678, 686 (7th Cir. 2006); Hemphill v. New York, 380 F.3d 680, 688 (2d Cir. 2004). But see Larkin v. Galloway, 266 F.3d 718, 723-24 (7th Cir. 2001) (failure to exhaust not excused because plaintiff was afraid of retaliation). For threats or intimidation to render administrative remedies unavailable, they must typically be substantial and serious enough that they would deter a similarly situated prisoner of ordinary fitness from pursuing administrative remedies. See Turner, 541 F.3d at 1085; Kaba, 458 F.3d at 684-86; Hemphill, 380 F.3d at 688.

Here, Plaintiff has made no claim that prison officials prevented him from exhausting his administrative remedies. Furthermore to the extent Plaintiff indicates he was frightened, he makes no allegations that his failure to exhaust was the result of threats or intimidation. Accordingly, because Plaintiff acknowledges on his form complaint that he did not exhaust his administrative remedies, his allegations regarding the conditions of his confinement should be dismissed for failure to exhaust.

**E. Special Management Unit**

In his form complaint, it appears that Plaintiff is alleging that he did not meet the standard for admission to the Special Management Unit. ECF No. 5 at 2–3. Plaintiff also appears to allege that the DHO at U.S.P. Lewisburg and the Regional Board were aware of that fact, but disregarded "his rights by going against the evidence." Id..

Pursuant to BOP Program Statement 5217.01, "designation to a SMU may be considered for any sentenced inmate whose interaction requires greater management to ensure the safety, security, or orderly operation of Bureau facilities, or protection of the public, because the inmate meets **any** of the following criteria:

- Participated in disruptive geographical group/gang-related activity.

- Had a leadership role in disruptive geographical group/gang related activity.

- Has a history of serious and/or disruptive disciplinary infractions.

- Committed any 100-level prohibited act, according to 28 C.F.R. part 541, after being classified as a member of Disruptive Group pursuant to 28 C.F.R. part 524.

- Participated in, organized, or facilitated any group misconduct that adversely affected the orderly operation of a correctional facility.

- Otherwise participated in or was associated with activity such that greater management of the inmate's interaction with other persons is necessary to ensure the safety, security, or orderly operation of Bureau facilities or protection of the public."

(emphasis in original).

If an inmate appears to satisfy any of these referral criteria, the Unit Team may present a re-designation referral to the Warden. If the Warden approves the referral, it is submitted to the Regional Director. If the Regional Director determines that sufficient evidence exists to convene a hearing, the Regional Director appoints a Hearing Administrator to conduct a hearing into whether

the inmate meets the criteria for SMU designation. The Hearing Administrator will have been trained and certified as a Discipline Hearing Officer. The Hearing Administrator considers whether, based on information obtained during the referral process and presented at the hearing, the inmate meets the criteria for the SMU program. The Regional Director then considers whether, based on the Hearing Administrator's findings, the SMU referral is necessary to ensure the safety, security, or orderly operation of Bureau facilities, or protection of the public. The inmate's copy of the completed Report is sent to the referring Warden, who ensures delivery to the inmate. The Report advises the inmate of the opportunity to appeal the decision and Hearing Administrator's findings through the Administrative Remedy Program, directly to the Office of General Counsel. However, an inmate's appeal of the decision or the Hearing Administrator's findings does not delay designation and transfer to a SMU. However, the inmate may proceed with the appeal while housed in the SMU.

Aside from stating that he did not meet the criteria for placement in the SMU, and the DHO ignored the evidence, Plaintiff provides no specific information which would indicate that his due process rights were denied during the SMU hearing process. Plaintiff does not allege that he received notice of the hearing less than 24 hours before the hearing, that he was denied the assistance of a staff member, that he was denied the right to make an oral statement or present documentary evidence and written witness statements, or that he was denied a Hearing Administrator who was an impartial decision-maker and was not personally involved as a witness or victim in any relevant disciplinary action taken against him. Accordingly, Plaintiff has failed to state any constitutional violation with respect to the hearing process through which he was transferred to a SMU.

Finally, to the extent Plaintiff is attempting to make complaints about the conditions of his confinement in the SMU, he must do so in the Middle District of Pennsylvania. The SMU in which Plaintiff is confined and about which he may be complaining is located in U.S.P. Lewisburg, over which this Court has no jurisdiction. Accordingly, Plaintiff's complaint as it reflates to his conditions of confinement there should be dismissed without prejudice.

## IV. RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that Plaintiff's Bivens complaint (Doc. 1) be **DISMISSED WITH PREJUDICE** against Warden O'Brien and the SMU hearing officer for failure to state a claim upon which relief can be granted and be **DISMISSED WITHOUT PREJUDICE** against the remaining defendants for lack of personal jurisdiction or for failure to exhaust administrative remedies. In addition, it is the undersigned's recommendation that Plaintiff's complaint in so far as it raises issues regarding the conditions of his confinement in the SMU at USP Lewisburg be **DISMISSED WITHOUT PREJUDICE** to his right to bring an action regarding those conditions in the United States District Court for the Middle District of Pennsylvania. Finally, the undersigned recommends that Plaintiff's Motion with Grievance Grivance (sic) Attachment and Question of Personality [ECF No. 18] be **DENIED** as lacking a substantive request for a court order.

Within fourteen (14) days after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal

15

from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied</u>, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested.

Dated: October 28, 2015.

*/s Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE